JOSEPH MUTOLO, Plaintiff, *v.* UTICA GENERAL JOBBING FOUNDRY, INC., Defendant.

Supreme Court, Oneida County, December 5, 1936.

*Ferris, Burgess, Hughes & Dorrance,* for the motion.

*Salvador J. Capecalatro,* opposed.

SMITH (E. N.), J.   For the purposes of the motion we must assume that the allegations of the complaint are true.

The defendant, an industrial corporation, operates a foundry in the city of Utica, manufacturing metal castings by the use of moulds.

The plaintiff entered the employ of the defendant in the year 1919 as a moulder and continued in such employment until the first week in October, 1935.   The complaint alleges that on account of exposure to silica dust in the process of moulding and the operation of a sand blast in the plant of the defendant, and the defendant's negligence in failing to provide adequate ventilation, the plaintiff's lungs have been affected, and that on account of the nature of his employment and the neglect of the defendant to provide proper safeguards he is now suffering from silicosis; that his respiration has been made shallow and his chest expansion markedly limited; that he suffers pain and discomfort, and that his expectancy of life has been reduced.

The complaint fails to allege any disability which interfered with the performance of his duties or impaired his earning power as a moulder in the plant of the defendant. It alleges that in or about the first week of October, 1935, at the instance and request of defendant's insurance carrier, plaintiff submitted to a physical examination and was informed thereafter for the first time by the defendant that he, the plaintiff, was suffering from silicosis; that at the request of the insurance carrier the defendant forthwith discharged the plaintiff from its employ.

The plaintiff further alleges that his present condition was solely caused by his continuous exposure for a period of years to silica dust, due to the negligence of the defendant, and that his present condition could not have asserted itself nor could it have been contracted by the plaintiff on account of having been exposed to those conditions subsequent to September 1, 1935; and that the plaintiff became a victim of his physical condition within two years prior to September 1, 1935, and that the condition of which plaintiff complains did not assert itself subsequent to September 1, 1935.

There is in this complaint no allegation that this plaintiff suffered any disablement on account of an existing condition of silicosis right up to the time of his discharge early in October, 1935; on the contrary, the inference to be drawn from the allegations of this complaint leads to no other conclusion than that he had not suffered even a partial disability up to the time of his discharge in October, 1935.

The action shown by the complaint is a common-law action to recover damages for injuries to the person of the plaintiff claimed to have been caused by the negligence of the defendant. It is nothing more. The defendant claims that such an action, where the injury is caused by silica dust, can, on account of recent provisions of the Workmen's Compensation Law, no longer be maintained.

The nature of the condition or disease known as silicosis and the manner of the development thereof are such that there is nothing unreasonable about the allegations of the complaint to one who has any familiarity with the subject. The effect of dust containing free silica is to cause a fibrosis of the lungs. There may be a continuous exposure so slight that it would take fifteen years before fibrosis would go far enough in lung destruction to give symptoms of shortness of breath or air deficiency. This condition might, however, arise in a shorter period of time, dependent upon the severity of the exposure. When we consider that the earth's surface is fourteen per cent silica, and that in all conditions of dust, whether in manufacturing plants, mining plants, or on the streets, in the roads and in the fields, where the winds create dust, we are

all exposed, and that medical authorities teach us that particles larger than ten microns seldom if ever reach the lungs, and that Nature's protective mechanism is such that it will take care of any ordinary amount of dust, and even excessive amounts, for years before symptoms of silicosis appear, and that, as one authority points out, so many as 10,000,000 particles of dust per cubic foot, with thirty-five per cent free silica, is not necessarily dangerous, and that this produces only a very slight fibrosis of the lungs, as occurs in practically all people, we can readily see that there is no basis for an assumption that at the time of the discharge of this plaintiff in October, 1935, he had experienced any " disablement " within the meaning of the Workmen's Compensation Law.

Knowledge by medical authorities on the subject of silicosis is in the process of development, and no final opinion has yet been reached. For years, and until very recently, the mechanical theory was held that the lungs were injured merely because of scratches caused by the silica therein, so that there was merely a wound created which caused scar tissue. Now the theory has developed, and I think it is largely accepted, that the fibrosis is caused by chemical reaction of the alkaline condition of lung tissues upon the silica, which sets up an inflammation which results in the fibrosis and, therefore, brings silicosis within the classification of a disease as distinguished from a condition. Whether when a fibrosis develops it is limited by the amount of silica in the lungs at a particular time and ends with the termination of the exposure, or whether the fibrosis itself developed by an exposure grows upon itself even after the exposure is removed, are questions yet to be settled. Although there are authorities to the contrary, we have yet to have it determined as to whether the silicosis is limited by the extent of the exposure or the termination thereof. The fact that we all probably have some evidences of silicosis would indicate that it is self-limiting by the amount of silica which actually gets into the lungs, and that the creation of the fibrosis or scar tissue is Nature's defense against the extension of lung destruction. These are problems as to which members of the medical profession may differ in opinion, and this subject is here discussed only for the purpose of showing the nature of the disease we have under consideration and the difficulties of the problem presented on this motion.

Is the injury from which the plaintiff suffers covered by the Workmen's Compensation Law? This law is chapter 67 of the Consolidated Laws. Prior to the enactment of chapter 538 of the Laws of 1920, occupational diseases were not covered by the Workmen's Compensation Law. This law then covered what are generally known as injuries sustained in the course of a hazardous employ-

ment, by accidents. Then " injury " and " personal injury " meant " only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom." The compensation was for disability or death resulting from an injury, arising out of and in the course of the employment, and the amount of the liability was fixed.

By chapter 538 of the Laws of 1920 the Workmen's Compensation Law was extended to certain occupational diseases, under a new article, known as article 2-A, and these diseases were scheduled and did not include diseases caused by exposure to dust. By chapter 615 of the Laws of 1922 said chapter 67 of the Consolidated Laws was generally amended, and article 2-A became article 3 and was made up of sections 37 to 48 of said chapter 67; and the schedule of occupational diseases was set forth in section 3 of article 1 of said chapter. In this schedule nineteen occupational diseases were listed. From time to time other occupational diseases were added by amendments, but it was not until 1935 when by any construction diseases known as diseases caused by dust exposure, and under the general classification of " pneumonoconiosis," were covered as occupational diseases.

Section 38 of article 3, under the heading " Disablement," treats as an accident: " The disablement of an employee resulting from an occupational disease described in subdivision two of section three shall be treated as  *  *  *  an accident within the meaning of this chapter and the procedure and practice provided in this chapter shall apply to all proceedings under this article, except where specifically otherwise provided herein."

By chapter 254 of the Laws of 1935 (effective September 1, 1935) the schedule of occupational diseases was amended by adding group 28, and this amendment reads as follows:

" 28. Any and all occupational diseases. Nothing in group twenty-eight of this subdivision shall be construed to apply to any case of occupational disease in which the last injurious exposure to the hazards of the disease occurred prior to September first, nineteen hundred and thirty-five."

It is obvious that only by construction could silicosis and other dust diseases come within the expression, " Any and all occupational diseases." The difficulties are enhanced in reference to silicosis because of the fact that until recently it never was recognized as a disease, but rather as a condition; and I am not certain now that it should be classified as a disease; certainly it should not be so classified unless it shall be found that the fibrosis or scar tissue caused by free silica extends of its own force and is not merely the result of Nature's defense to the presence of an irritating substance

in the lungs.   One would hesitate, with the knowledge we now have as to what is called silicosis, to call it an occupational disease.

All doubt about silicosis and other dust diseases was removed by chapter 887 of the Laws of 1936, effective June 6, 1936, whereby a new article, known as article 4-A, was added to said chapter 67 of the Consolidated Laws, and entitled " Silicosis and Other Dust Diseases."   By said chapter 887 said group 28 was amended to read as follows:

" 28. Any and all occupational diseases.   Nothing in paragraph twenty-eight of this subdivision shall be construed to apply to any case of occupational disease in which the last injurious exposure to the hazards of the disease occurred prior to September first, nineteen hundred and thirty-five; *nor to any disability or death due to any disease described, in article four-a of this chapter.*"

So that by this amendment the Legislature excluded " silicosis and other dust diseases " from being included in group 28, " Any and all occupational diseases."   It did more than this.   By section 65, the first section of article 4-A, it made special provision for the prevention of the exposure in all industries to silica dust or other harmful dust hazards.   By section 66 it made special provision in reference to compensation payable for disability or death.   This section, among other things, provides that " compensation shall not be payable for partial disability due to silicosis or other dust disease."   This provision no doubt was made on account of the very nature of silicosis itself, and has some significance here because of the fact that there is no allegation of any disability at all, so far as this plaintiff is concerned.

The section provides an entirely new schedule of compensation payments in case of temporary or permanent total disability or death from silicosis:

" [a] If disablement or death occur during the first calendar month in which this act becomes effective not exceeding the sum of five hundred dollars;

" [b] If disablement or death occur during the second calendar month after which this act becomes effective not exceeding the sum of five hundred and fifty dollars; thereafter the total of compensation and benefits payable for disability and death shall increase at the rate of fifty dollars each calendar month.

" [c] The aggregate amount payable shall be determined by the total amount payable in the month in which disablement or death occurs.

" [d] In no event shall such  compensation exceed an aggregate total of three thousand dollars."

Section 66 contains this further provision: "Notwithstanding the provisions of section twenty-eight of this chapter, all claims for compensation resulting from inhalation of harmful dust, where the last exposure occurred between the effective date of this act and September first, nineteen hundred and thirty-five, shall be barred unless filed within one hundred and eighty days from the day on which this act takes effect."

It is obvious, under this provision, that this plaintiff, not having suffered any disablement to perform his work, is barred from any recovery whatsoever on account of the injuries which he has sustained. He cannot recover for partial disability; there is no permanent total disability, and there is no death on account of the injury from silicosis which this plaintiff has suffered. There having been no permanent disability during the employment, there is no basis for compensation, and he is in no position to file a claim because there is no disablement within the definition of this chapter; and it is only on account of disablement or death from injury that compensation may be awarded.

Section 37 of the Workmen's Compensation Law states:

" Whenever used in this article: 1. ' Disability ' means the state of being disabled from earning full wages at the work at which the employee was last employed.

" 2. ' Disablement ' means the act of becoming so disabled as defined in subdivision one."

Now, so far as silicosis is concerned, partial disability giving no right to compensation, and only total disability, whether temporary or permanent, or death, from silicosis, being recognized under section 66, how can it be said that this plaintiff is covered at all by the Workmen's Compensation Law, unless it be under section 67 of said article 4-A, which provides: "An employer shall be liable for the payments prescribed by this article for silicosis or other dust disease when disability of an employee resulting in loss of earnings shall be due to an employment in a hazardous occupation in which he was employed, and such disability results within one year after the last *injurious exposure* in such employment; or, in case of death resulting from such exposure, if such death occurs within five years following continuous disability from such disease. The provisions of section forty-four of this chapter shall not apply to claims arising under this article."

The difficulty with any possible remedy available to the plaintiff under this section arises from the fact that under the complaint no disability has been suffered resulting in the loss of earnings, and that no such disability has resulted within one year after the last injurious exposure in such employment. The plaintiff is living.

So far as the provision as to death within five years after continuous disability from the disease is concerned, that affords no remedy which will ever be available to the plaintiff.

Prior to September 1, 1935, it is clear (1) that injury resulting from silicosis was not within the coverage of the Workmen's Compensation Law, and (2) that on the ground of negligence on the part of the defendant in its failure to exercise reasonable care in making the place of work safe for an employee, and particularly in the manner prescribed in the sections of the Labor Law applicable to such a situation, the plaintiff had a cause of action.

Under the allegations of the complaint the plaintiff worked for the defendant up to the time of his discharge, in the first week of October, 1935, and up to the time of his discharge had suffered no disability within the meaning of the Workmen's Compensation Law. Let it be assumed that the last injurious exposure was the day prior to his discharge in the first week of October, 1935. He did not quit his work nor was he discharged because of disability. From the nature of the disease the injury could not have occurred after the 1st of September, 1935; moreover, it is alleged to have occurred some two years before that date. Certainly he had no relief under the Workmen's Compensation Law, even if the aforesaid amendment, effective September 1, 1935, giving coverage to " any and all occupational diseases " (Group 28 of subdivision 2 of section 3 of article 1), included silicosis. After the addition of article 4-A by chapter 887 of the Laws of 1936, effective June 6, 1936, certainly silicosis and other dust diseases were no longer covered under said group 28.

Under article 4-A, compensation for partial disability due to silicosis was excluded. Under the allegations of the complaint there has been no temporary or permanent total disability up to the date of the complaint, which was verified July 22, 1936.

Under section 67 the employer is liable for payments prescribed in article 4-A (§ 66) for silicosis when the disability of an employee results within one year after the last injurious exposure. The last possible injurious exposure was in the first week of October, 1935. What constitutes injurious exposure? Only if it can be found as a fact that there was " injurious exposure " during the period between September 1, 1935, and the first week in October, 1935, the time of the discharge of the plaintiff, could the plaintiff's case come within the provisions of section 67. At the time the complaint was drawn no one could determine whether within one year after the last injurious exposure disability on account of silicosis would arise. There was no remedy to the plaintiff under the Workmen's Compensation Law for the injury he sustained, which by no stretch of

the imagination could have been caused by an exposure to silica dust during the period between September 1, 1935, and the first week in October, 1935. The nature of silicosis is such that this simply could not have happened. If upon the trial it should be found that there was an injurious exposure after September 1, 1935, and before the discharge of the plaintiff in the first week of October, 1935, still, at the time this action was brought, there was no disability resulting in loss of earnings. According to the allegations of the complaint, the discharge of the plaintiff was not on account of disability, but because of the defendant's discovery that its employee, the plaintiff, was afflicted with silicosis. So that, at the time the action was brought, the plaintiff was not by any chance covered by the Workmen's Compensation Law. If the defendant in its answer should allege and prove that the plaintiff is in such condition, now that over a year has elapsed, that he is suffering from silicosis resulting in loss of earnings on his part, then there might arise an interesting question as to whether the proof of such fact would require a dismissal of the complaint.

There is a short Statute of Limitations in section 67 of article 4-A which bars all claims for compensation resulting from harmful dust where the last injurious exposure occurred between the effective date of this act and September 1, 1935, unless filed within 180 days from the date on which this act takes effect. Chapter 887 of the Laws of 1936 took effect June 6, 1936. The time within which to file a claim under the Workmen's Compensation Law has about elapsed. Plaintiff could not receive compensation for a partial disability, and, under the allegations of the complaint, verified July 22, 1936, could not file a claim for either temporary or permanent total disability. So it is evident that, under the allegations of this complaint, the plaintiff is not covered by the Workmen's Compensation Law.

If it should appear in the answer that within said 180 days the condition of plaintiff's health was such that he was entitled to compensation, and that he had filed a claim on that ground, an interesting question as to the constitutionality of section 67, so far as it applies to this plaintiff, might arise. Can such a provision defeat a cause of action which exists at common law at the time the law became effective? Without passing upon it, I express grave doubts, where, as here, the fundamental cause of action necessarily must, on account of the nature of silicosis, have been prior to the enactment of provisions bringing employees suffering from silicosis within the provisions of the Workmen's Compensation Law. The statute may, under proper circumstances, give him a remedy, but where the injury occurred and a cause of action existed at common law before the statute went into effect, could the law defeat such a

fundamental right and make the remedy under the Workmen's Compensation Law exclusive? I think not. The Workmen's Compensation Law was intended to be beneficial, not to be destructive of existing rights and, therefore, detrimental. (Workmen's Comp. Law [Consol. Laws, chap. 67], § 129.)

For the foregoing reasons the motion to dismiss the complaint is denied, with motion costs to the plaintiff.

Ordered accordingly.